[Cite as *In re B.G.*, 2011-Ohio-5898.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: B.G., | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| A MINOR CHILD. | : | Hon. Julie A. Edwards, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2011-COA-012 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Civil appeal from the Ashland County Court
                            of Common Pleas, Juvenile Division, Case
                            No. 20102163

JUDGMENT:                   Reversed and Remanded

DATE OF JUDGMENT ENTRY:     November 10, 2011

APPEARANCES:

For Appellee                       For Appellant

RAMONA F. ROGERS                   AMANDA J. POWELL
Ashland County Prosecutor          Assistant State Public Defender
110 Cottage Street                 250 E. Broad St., Ste 1400
Ashland, OH 44805                  Columbus, OH 43215

*Gwin, P.J.*

{¶ 1} Appellant B.G., a minor child, appeals a judgment of the Court of Common Pleas, Juvenile Division, of Ashland County, Ohio, which found he is a delinquent child by reason of having committed two acts of rape, which would be felonies if committed by an adult. The court classified B.G. as a juvenile offender registrant with a duty to comply with RC. 2905.04, 2905.041, 2950.05, and 2950.06. The court also classified appellant a Tier III sex offender subject to community notification. Appellant assigns four errors to the trial court:

{¶ 2} "I. THE JUVENILE COURT VIOLATED B.G.'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION WHEN IT CLASSIFIED HIM AS A JUVENILE SEX OFFENDER REGISTRANT WITHOUT PROVIDING HIM THE OPPORTUNITY FOR ALLOCUTION, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 2 AND 16 OF THE OHIO CONSTITUTIION, CRIM. R. 32, JUV. R. 29, AND JUV. R. 34.

{¶ 3} "II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM FOR B.G. IN VIOLATION OF OHIO REVISED CODE SECTION 2151.281 (A) AND JUVENILE RULE 4 (B).

{¶ 4} "III. THE TRIAL COURT ERRED WHEN IT CLASSIFIED B.G. AS A JUVENILE OFFENDER REGISTRANT BECAUSE IT DID NOT MAKE THAT DETERMINATION UPON HIS RELEASE FROM A SECURE FACILITY, IN VIOLATION OF R.C. 2152.83 (B)(1).

{¶ 5} "IV. THE TRIAL COURT ERRED WHEN IT ORDERED B.G. TO BE SUBJECT TO COMMUNITY NOTIFICATION."

{¶ 6} The record indicates B.G. was fourteen years old at the time of the offenses. The original complaint alleged he was a delinquent child for three counts of rape, but on October 5, 2010, the court accepted his admission of true to two of the charges, and dismissed the third. The victims in the case were B.G.'s eight year old sister and two cousins, aged six and two.

{¶ 7} As early as the shelter care hearing, the court addressed appellant's grandparents and ordered them to have no contact between appellant or with any of the victims. The court indicated they were to have no children residing in their home and if the court found out there were children in the home, the Department of Job and Family Services would immediately take action.

{¶ 8} At the detention hearing on July 2, 2010, the State advised the court appellant had been in the custody of his grandparents, who had been aware of the abuse, but did very little to prevent it. The State argued the grandparents facilitated the abuse by telling the victim not to tell anyone what had happened. The court directed B.G. to have no contact either directly or indirectly with any of the alleged victims in the case. The court also directed he was not to have any contact with the grandparents.

{¶ 9} Subsequently, at the disposition hearing, the State elaborated on appellant's family background. The State alleged B.G.'s father, uncle, and possibly another family member had been charged with sex offenses. The prosecutor indicated appellant's father had been accused of sexual offenses committed against B.G.'s two older sisters, and it would not be a surprise to learn appellant had also been victimized.

{¶ 10} Officer Kim Mager of the Ashland County Police Department testified the grandparents had caught appellant in the act repeatedly, and failed to contact Children's

Protective Services, the police, or any other party. The officer indicated the grandparents had scolded appellant and threatened that he would end up in jail like his father. However, they permitted appellant to continue to be around the victims.

II.

{¶ 11} In appellant's second assignment of error, he argues the trial court should have appointed a guardian ad litem for him. We agree.

{¶ 12} Our standard of reviewing the court's decision whether to appoint a guardian ad litem is the abuse of discretion standard. *In Re: Sappington* (1997), 123 Ohio App. 3d 448, 454, 704 N.E.2d 339. The Supreme Court has repeatedly defined the term "abuse of discretion" as implying the court's attitude is unreasonable, arbitrary, or unconscionable. See, e.g., *Blakemore v. Blakemore* (1983), 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140.

{¶ 13} R.C. 2151.281 and Juv. R. 4 both deal with the appointment of a guardian ad litem. R.C. 2151.281 (A) provides the court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child when the court finds that there is a conflict between the child and the child's parent, guardian or legal custodian.

{¶ 14} Juv. R. 4 (B) provides: "the court shall appoint a guardian ad litem to protect the interest of the child or incompetent adult in the juvenile court proceeding when: *** (2) the interest of the child and the interest of the parent may conflict***"

{¶ 15} Juv. R. 4 therefore requires the appointment of a guardian ad litem where there is a possibility of conflict, while the statute requires appointment only if the court finds there is an actual conflict of interest. *Sappington,* supra, at 453. The relevant

question on appeal is whether the record reveals an actual or potential conflict of interest which required the appointment of a guardian ad litem.  Id.

{¶ 16} In *Sappington,* supra, the seventeen year old child was accused of domestic violence against his mother, and his father accompanied him to the hearing. When the child expressed an interest in speaking with an attorney, the father, in open court, persuaded him it was unnecessary. The court of appeals found although the magistrate had not made a finding there was a potential or actual conflict of interest, it was implicit in the facts and circumstances of the case. In the case at bar, the court did not find a potential or actual conflict, but found it necessary to enter a no-contact order with appellant's legal custodians. The evidence before the court was that the grandparents had not taken action to prevent the abuse and had not attempted to get assistance to deal with the situation.

{¶ 17} The State cites us to *In Re: Becera,* Eighth App. No. 79715, 2002-Ohio-678, where the parent was a victim in a domestic violence case.  The court there found the pertinent question was whether the parent was acting in a parental role sufficient to protect the juvenile's rights.  The court found it was significant that the child was represented by counsel. The court noted a guardian ad litem would not necessarily have made the recommendations the child wanted, if the guardian found those recommendations were not in the child's best interest. The court concluded no guardian ad litem was required to protect the child's interests.

{¶ 18} R.C. 2151.281 (H), and Juv. R. 4 (C) permit an attorney to serve both as counsel and as guardian ad litem for a child in a juvenile court proceeding, provided the

court makes an explicit dual appointment and no conflicts arise in the dual representation. Here, the court did not order dual representation.

{¶ 19} The Supreme Court has recognized the roles of guardian ad litem and of attorney are not always compatible, because they serve different functions. The role of a guardian ad litem is to investigate the juvenile's situation and to ask the court to do what the guardian determines to be in the child's best interest. The role of the attorney is to zealously represent the client within the bounds of law. *In re: Baby Girl Baxter* (1985), 17 Ohio St. 3d 229, 479 N.E.2d 257.

{¶ 20} Here, the court felt the custodial grandparents were so unsuitable that it entered a no-contact order, which in effect prevented them from taking any steps to protect the rights of appellant and of all three victims. The court clearly found they had nothing positive to offer any of the children. The record does not show any other adult coming forward to fill the role of parent or guardian ad litem. This fourteen year old boy pled true to very serious charges with only his counsel to advise him.

{¶ 21} We find the trial court erred in not appointing a guardian ad litem for appellant. The second assignment of error is sustained.

### III. & IV.

{¶ 22} In his third assignment of error, appellant argues the court erred in classifying him as a juvenile offender registrant because it could only do so upon his release from a secure facility. In his fourth assignment, he argues the court erred in finding him to be subject to community notification.

{¶ 23} R.C. 2152.83 controls the classification of a child as a juvenile offender registrant. Section (A) applies to children sixteen or seventeen years of age at the time

of the offense. It provides "the court that adjudicates a child as a delinquent child *shall* issue as part of the dispositional order or, if the court commits the child *** to the custody of a secure facility, *shall* issue at the time of the child's release from a secure facility in order that classifies the child a juvenile offender registrant.***"  (emphasis added.)

**{¶ 24}** This language has been construed to mean if the court commits the child to the Ohio Department of Youth Services, it must wait until the child is released to make the classification.  See, e.g., *In Re: J.B.,* Morrow App. No. 2011-CA-0002, 2011-Ohio-4530; *In the Matter of: P.B.,* Scioto App. No. 07-CA-3140, 2007-Ohio-3937.

**{¶ 25}**      However, the statute treats a fourteen or fifteen year old child differently.  Under those circumstances, the statute provides:

**{¶ 26}** "(B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, *may* conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, *may* conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:

**{¶ 27}** "(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

**{¶ 28}** "(b) The child was fourteen or fifteen years of age at the time of committing the offense.

**{¶ 29}** "(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender

registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code." (emphasis added).

**{¶ 30}** R.C. 2152.82 deals with juvenile offenders with prior sexual offenses and R.C. 2152.86 refers to children found to be serious youthful offenders. Neither section applies to appellant.

**{¶ 31}** R.C. 2152.83 (B) has been construed as permitting the court to choose when to classify the child, that is, either at the time of disposition or the time of the child's release. *In the Matter of P.B.*, supra.

**{¶ 32}** We find this is not what the Legislature intended. The statute should be construed as permitting the court to classify the child at disposition unless the child is sent to a secure facility, in which case it may classify the child upon release. The use of the word "may" indicates the court has discretion to decide whether, not when, to classify the child. The court may determine no hearing is necessary, or may hold a hearing but decline to classify the child, based upon the individual circumstances of the case.

**{¶ 33}** This interpretation of the statute is supported by the subsequent section. Subsection (B)(2) provides:

**{¶ 34}** "(2) A judge shall conduct a hearing under division (B)(1) of this section to review the effectiveness of the disposition made of the child and of any treatment provided for the child placed in a secure setting and to determine whether the child should be classified a juvenile offender registrant. The judge may conduct the hearing on the judge's own initiative or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the

court, or a prosecutor or law enforcement officer. If the judge conducts the hearing, upon completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:

{¶ 35}    "(a) Decline to issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code;

{¶ 36} "(b) Issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and that states the determination that the judge makes at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender."

{¶ 37} This language supports the interpretation that the Legislature intended for the court to classify the child only after determining whether the disposition and treatment provided for the child in a secure setting was effective.  The statute does not require the court to classify the child as any type of juvenile offender registrant.  Thus, we find the use of the word "may" does not indicate the court has discretion regarding when to classify the child. Instead, the word "may" indicates the court has discretion to determine whether the child should be classified.

{¶ 38} The timing of the classification is the same for either sixteen and seventeen years old pursuant to R.C. 2152.83 (A) and for fourteen and fifteen years old under (B): at disposition, unless the child is referred to a secure facility, in which case

the court must wait until the child has completed his or her stay in the secure facility to determine whether treatment received there was effective.

{¶ 39} To hold otherwise would mean that children sixteen or seventeen years of age will not be classified until they have completed whatever programs DYS considers appropriate while they are in the secure facility, but a younger child could be determined to be a juvenile offender prior to receiving the benefit of whatever programs are available and appropriate in the secure setting.

{¶ 40} Our reading of the statute is also more in accord with the purpose and goals of the juvenile justice system. In the case of *In the matter of W.Z.,* Sandusky App. No. S-09-036, 2011-Ohio-3238, the Court of Appeals for the Sixth District succinctly summarized:

{¶ 41} "*** [J]uvenile proceedings are 'civil' rather than criminal and, in theory, the priority of the juvenile system has been rehabilitation, rather than punishment. Society generally refuses to penalize youth offenders as harshly or to hold them to the same level of culpability as adults, who are older and, presumably, wiser and more mature. *** In addition, an essential tenet of the juvenile system has been to maintain the privacy of the youthful offender. Although juveniles may be denied certain procedural rights afforded to adult criminal defendants, such as public indictment or trial by jury, they are protected from the publicity and stigma of criminal prosecution." Id. at paragraphs 23-24, citations deleted. We find a court should give a child all possible benefit of rehabilitation and treatment before deciding to order him or her to comply with the registration and community notification similar to that required of adult offenders.

**{¶ 42}** We find the trial court's classification of appellant as a juvenile offender registrant subject to community notification was premature, and it should make the determination, if at all, after appellant is released from DYS custody.

**{¶ 43}** The third and fourth assignments of error are sustained.

I.

**{¶ 44}** In his first assignment of error, appellant urges the court failed to provide him with the opportunity for allocution at the classification hearing. The statute does not address this issue.

**{¶ 45}** Because we find the court should have delayed the classification hearing until after appellant's release from DYS custody, we find the issue is premature.

**{¶ 46}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Ashland County, Ohio, is reversed, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.


Edwards, and Delaney, JJ., concur.


_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS

_____
HON. PATRICIA A. DELANEY

[Cite as *In re B.G.*, 2011-Ohio-5898.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: B.G.

:
:
:
:
:
:
:                    JUDGMENT ENTRY
:
:
:
:                    CASE NO. 2011-COA-012


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Ashland County, Ohio, is reversed, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.  Costs to appellee.


_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS

_____
HON. PATRICIA A. DELANEY